## Andrew J. Dougherty

v.

## Henry H. Spencer.

*Fixtures—Injunctions—Remedy at Law—Landlord and Tenant—Evidence.*

1. Where a building is erected on land, the presumption is that it is a part of the real estate and not personal property.

2. A tenant, without the permission of, or an agreement on the part of his landlord, can not lawfully sever a house from the freehold, use the material thereof in connection with material by him furnished in the erection of another house on the leased premises, and before his term expires, remove the latter house from said premises and appropriate it to his own use as a trade fixture.

3. Upon a bill to restrain a tenant from removing a house from the demised premises. it is *held:* That the complainant was not required to resort to his remedy at law; and that the house in question was not subject to removal as a fixture by the tenant.

[Opinion filed June 7, 1887.]

Appeal from the Circuit Court of Pulaski County; the Hon. Robert W. McCartney, Judge, presiding.

Messrs. Robarts & Bradley and W. T. Freeze, for appellant.

Messrs. Green & Gilbert, Crandall & Linegar and Thomas Boyd, for appellee.

Green, J. Bill for injunction by appellee, to restrain appellant from removing a frame house off the premises belonging to the former, occupied by the latter as his tenant, under a lease dated October 13, 1880, and expiring January 1, 1885.

A hearing was had, a decree entered as prayed for in the bill, to reverse which Dougherty took this appeal. By the terms of the lease he was to clear the land of timber, portions

to be completed by January 1st of each year, in 1882, 1883 and 1884, at which last date the entire tract was to be cleared ready for 'cultivation, and appellant was to be paid for said work as it progressed certain sums named in the lease. It appears by the record, and is not disputed, that when the bill was filed, Spencer owned the 'premises. Dougherty was in possession as a tenant under the lease, and was then about to remove the house in controversy off of the leased premises, claiming. to own it, and would have so removed it to, and placed it upon land he had leased from another party, had he not been restrained by the writ. At the time appellant entered under his lease, an old two-story frame house (36 feet by 16, with kitchen attached, one story high, 16 by 18 feet) stood upon the premises, and was torn down, and the house in controversy (one and a half story high, 15 by 30 feet, with ell 20 by 24 feet) was erected by appellant upon another part of the leased premises, with material taken from the old house, and some new material furnished by appellant, the amount and kind of which is not shown; but it does appear that all of the material in the old building, that was good or suitable, was used in the house in controversy. So far there is no dispute as to material facts, and the only contradiction in the testimony of the parties is concerning conversations. Spencer testifies he told Dougherty at the time the lease was signed, he would reserve the old house and move it to another farm; but Dougherty said he would need a house on the land, and if Spencer would leave it he would put it up at the spring on the leased land; to which he, Spencer, replied if he would do that he would leave the house on the land. He also testified, Dougherty called at his house in the spring, and said his brother John had spent more money on the house than he intended he should, and he thought I ought to pay for it; that nothing more was said about the house until in the summer or fall of 1884, when he presented a bill of $350 for the house. I refused to pay it. Appellant denied such conversations were had, but testified that in 1884 he asked Spencer to buy the house from him, and he replied he did not consider it of any value. This conversation Spencer

testified never took place. Appellant also testified he never said anything to Spencer about tearing the old building down. Other than the testimony of the parties and the lease read in evidence, the record discloses nothing whereby it appears any right was given by appellee to the appellant to tear down the old house and use the material in it to construct the house in controversy.

In the lease we find no such right given, and if appellant is correct when he says the conversation detailed by appellee (in which the latter gave permission to put up the old house at the spring) never took place, no such right was ever given appellant. In this state of the record, appellant insists the appellee had a remedy at law and was not entitled to relief in chancery even if appellant was about to wrongfully remove the house from the leased premises; and further contends he had a lawful right to remove and appropriate to his own use the house in controversy, because it was a fixture erected by himself on the leased premises for the purpose of carrying on his business of clearing said land, and its removal would not damage the freehold. As to the first of these contentions, we apprehend the appellee ought not to be compelled to wait until the threatened waste was accomplished, and then pursue appellant at law for the damages, but had the right to the aid of a court of chancery, by injunction, to afford him a more speedy and adequate remedy. And the second contention is also untenable. While it is true the courts of this country have adopted a more liberal rule than that applied by the English courts concerning trade fixtures, and have, to a certain extent, done away with the distinction made by the English courts between structures erected by the tenant for the purpose of trade and manufacture, and those erected for the purpose of agriculture, we believe no well considered case can be found, decided by a court in this country, holding that a tenant, without the permission of or agreement on the part of his landlord, giving him the right so to do, can lawfully sever a building from the freehold, use the material of such building, together with material by himself furnished, in the erection of another house on the leased premises, and before his term expires remove

the latter house off said premises, appropriate it to his own use as a trade fixture, and damage the freehold by denuding it of a structure, which, at the time the tenant entered, was a part of the realty.    In Dooley v. Crist, 25 Ill. 551, it is said : Generally,  all  improvements  or  additions  of  a  permanent nature, and adapted  to its use  and  better  enjoyment, placed upon land, are regarded  as forming a part of the land.    Trade fixtures are the exceptions to this rule;  by express agreement between the parties,  erections placed upon the land by the tenant  during  the  term, may  be  removed  as personal  property; but,  as a general rule, when a building is erected on land, the presumption is it is a  part  of the real estate and not  personal property, and to take it out of the operation of the rule, a state of facts must be shown  that rebuts  the presumption. Applying the rule of law  as thus stated, to the facts of this case,  it is manifest we must regard  the  house  in controversy as a part of the real estate and not subject to removal as a fixture by the outgoing tenant.    Hence the court below, by its decree, properly enjoined the removal thereof by appellant, and the decree is affirmed.

*Affirmed.*